ELY VS M'CLUNG, (surety.)

*As to usurious contracts.*

1. Usury is complete where a direct loan of money is made, and more than the legal rate of interest is secured for the forbearance of payment.
2. Whatever form, shape, or disguise, a contract for the loan of money assumes, when the capital is to be returned, at all events,—a profit made, or loss imposed, upon the necessities of the borrower, [over and above the legal rate of interest,] will constitute usury.
3. To make a contract for the loan of money usurious, there must exist the intention, knowingly to commit usury.
4. The intent of parties to commit usury, where the contract is not upon its face usurious, is to be collected from the circumstances of the case,—the situation, and object of the parties, at the time of the loan ; the character of and use to be made of the funds loaned, or article transferred ; and the time, manner, and place of repayment.
5. A contract for the loan of money, upon which a note and surety is taken, and which, by the terms of the note, is to be repaid in *another State*, (not containing any agreement as to the particular rate of interest to be charged,) which, after maturity, and the insolvency and death of the borrower, is extended by his sureties upon a new contract, under which a higher rate of interest, is charged upon the note, after its maturity, than is authorised by the laws of the State, where the note is payable—is usurious.

In error to a decree of the Circuit Court of Madison, exercising Chancery jurisdiction.

This case arose upon a bill in Chancery, filed by William Ely, Commissioner of the funds of the American Deaf and Dumb Asylum, at Hartford, Connecticut, against James W. M'Clung, the surety of one Jesse D. Noble; the object of which was to foreclose a mortgage.

The bill charged, that on or about the nineteenth day of June, one thousand eight hundred and twenty-eight, defendant being seized in fee, of a certain lot or parcel of land, in the town of Huntsville, and being indebted to orator, in the sum of four thousand seven hundred and fifty-two dollars and forty cents, by two notes of hand, bearing date the twenty-second December, one thousand eight hundred and twenty-seven, and executed by defendant and one Andrew D. Veitch, who had since died—one of which was for the sum of six hundred and eleven dollars and ninety-two cents, due and payable at the Mechanics' Bank of New York, on the nineteenth day of March; the other for the sum of four thousand one hundred and thirty dollars and forty-eight cents, due and payable at the same time and place : and, being desirous of securing orator in the payment thereof, by deed, duly executed and recorded, bearing date the nineteenth day of June, one thousand eight hundred and twenty-eight, conveyed to orator, the certain parcel of land aforesaid; and bargained and sold the same to complainant—with a provision of redemption, if the aforesaid notes were paid ; otherwise, to be sold for the satisfaction of the same.

4P      17

The bill then alleged a failure on the part of defendant, and of Veitch, to discharge the same; averred having exhausted all avails against Veitch's estate; and prayed a foreclosure.

The answer of M'Clung averred the following circumstances, to be the facts under which the notes described in the bill were executed:

A certain corporation, located at Hartford, in the State of Connecticut, and styled, "The American Asylum, at Hartford, for the education and instruction of the deaf and dumb," some time about the year one thousand eight hundred sixteen, seventeen or eighteen, received from the Congress of the United States, a donation of a township of land, which which was principally, if not entirely selected by said corporation, through their agent, the complainant, in Alabama. Complainant, in his capacity of agent, having sold large quantities of said land, and having in his hands, or in the hands of his sub-agent, one John Boardman, a large amount of depreciated currency, consisting of Georgia and Mobile Bank notes, which they desired to convert into specie, or its equivalent—on the nineteenth day of March, one thousand eight hundred and twenty-four, loaned to the before named Jesse D. Noble, in the town of Huntsville, and State of Alabama, the sum of three thousand two hundred and ninety-seven dollars, in said depreciated currency, then at a discount of about twenty-five per cent.; and obtained therefor the note of said Noble, as principal, with the respondent and the said Andrew D. Veitch, as sureties, for the sum of thirty-eight hundred and twenty-four dollars and fifty-two cents, due on the nineteenth day of

March, one thousand eight hundred and twenty-six
—the said note being for the nominal amount of said
depreciated notes, with five hundred and twenty-
seven dollars and fifty-two cents, interest, at the
rate of eight per centum per annum, added thereto,
payable to said John Boardman, at the Mechanics'
Bank of the city of New York—the said M'Clung
not being aware of the usurious character of the
transaction, at the time of signing it.    When the
said note was executed, Boardman, as the agent of
complainant, obtained from Noble, a mortgage upon
a house and lot, which was duly recorded.    On the
sixth day of September, one thousand eight hundred
and twenty-five, said Veitch and M'Clung becoming
uneasy, in consequence of the failing condition of
Noble, procured from him a deed of trust upon
slaves, as an indemnity against the security afore-
said: and some time thereafter, to wit, about the
time of the maturity of the aforesaid note, Noble
left the northern part of Alabama, entirely insolvent,
and had since died. Subsequently, the trust property
was sold for the benefit of Veitch, and M'Clung pur-
chased in for their joint benefit, and then conveyed
to the complainant, by mortgage, to secure the afore-
said debt of Noble.

The answer of M'Clung, after charging sundry
payments, insisted that complainant was only enti-
tled to recover the value of said depreciated curren-
cy, at the time loaned, together with interest, at the
rate of *seven* per centum per annum, being the rate
allowed in the State of New York, where the said
note was payable.

The above facts were established in the cause, to-

gether with the additional circumstances, that the said Veitch and M'Clung executed their own notes, after some indulgence had been extended; that the mortgage here sought to be foreclosed, was executed in further security; and that seven per centum per annum, was the legal rate of interest in the State of New York. Also, that a difference existed between the notes received by Noble, and specie, to the extent of about six and a half per cent.; and that exchange on New York, bore a premium at Huntsville.

The Chancellor below having dismissed the bill, on the ground that the transaction was usurious, the case was brought here, by writ of error, and argued by *Ellis & Peck*, for the plaintiff in error ; and by *Ormond* and *S. Parsons*, for the defendant.

HITCHCOCK, C. J.—This was a bill in Equity, filed in the Circuit Court of Madison county, by the plaintiff in error, against the defendant, to foreclose a mortgage. The defence set up is usury.

The facts of the case, as disclosed by the answer and depositions, are, that the complainant, as commissioner of the funds of the American Asylum, at Hartford, Connecticut, for the education of the deaf and dumb, had in his hands, at Huntsville, in this State, in March, eighteen hundred and twenty-four, a considerable sum of money, which had been received by him for said institution, being the proceeds of the sales of lands granted by the United States to that institution : that said money was principally in Mobile and Georgia Bank notes : that being anxious to remit the funds to the North, and bills on the North being then at a premium at

Huntsville, he loaned, through his said agent, J. Boardman, to one Jesse D. Noble, a merchant residing at Huntsville, on the nineteenth of March, eighteen hundred and twenty-four, who applied to him for that purpose, the sum of three thousand two hundred and ninety-seven dollars, to be repaid two years after date, in the city of New York, with interest at eight per cent.; and that to secure said payment, he took the joint note of Noble and one Andrew D. Veitch, and of the defendant in this bill, which was also secured by a mortgage on some property of Noble in Huntsville; and that the note including the interest, amounted to three thousand eight hundred and twenty-four dollars and fifty-two cents: that payment for said note was received by Noble in the above named bills, at par with specie : that the note was not paid at maturity, Noble having, soon after the loan, become insolvent: that subsequently, it was returned to Boardman for collection: that he called on Veitch and the defendant for payment, which they professed to be unable to make, and asked for indulgence, which was granted, from time to time, without instituting judicial proceedings, until the twentieth of December, eighteen hundred and twenty-seven, a period of one year and nine months after the maturity of the note, when payment was again urged; but upon the parties still asserting they were unprepared to pay, Boardman proposed to them to pay the interest which had accrued *since* its maturity at some early day, and the principal in one year thereafter, with the additional interest thereon, to which they readily assented, and agreed to take up the original note, to assume the debt, and to

give their joint note, with ample security, for the final payment, by deed of mortgage on real estate in Huntsville: that accordingly, two notes were given by Veitch and the defendant; one for six hundred and eleven dollars and ninety-two cents, being two years interest on the original note, at eight per cent. from its maturity, payable to William Ely, commissioner, &c., at the Mechanics' Bank, New York, on the nineteenth day of March, eighteen hundred and twenty-eight; and the other, for four thousand one hundred and thirty dollars and forty-eight cents, being the amount of the original note and one year's interest thereon, at eight per cent., payable at the same place, on the nineteenth day of March, eighteen hundred and twenty-nine: that the original note was then given up, the security on the house and lot released, and a mortgage taken to secure the two new notes on town property of Veitch: that some time after, the defendant also executed a mortgage on a house and lot in Huntsville: that Veitch died soon after: that the notes were not paid at maturity: that the property secured by Veitch has been exhausted; and that a balance is still due, for which this bill is filed, to subject the property of the defendant.

A cross bill was filed by the defendant, making Boardman a party, whose answer was filed. This bill was subsequently dismissed; but the testimony of Boardman was taken upon interrogatories, which contains substantially the facts disclosed in his answer.

Boardman denies all *intention* to commit usury; states that the bills received by Noble were upon specie paying banks: that they were then received

in all the land offices of the United States in this State, in payment for public lands; by the merchants in town in all commercial transactions, and all over the State at *par ;* also by the complainant for lands of the Asylum; that they were sound funds, and what he considered at par with specie : that the motive of complainant and himself, as sub-agent, in making the loan, was to convert the notes into northern funds without loss of interest to the Asylum, and to save paying a premium for the exchange between Huntsville and New York: that at the time of the loan to Noble, he had no knowledge of his embarrassments, but believed him solvent, though he was advised of his difficulties with his partner, Cox, which resulted in a dissolution of the firm, at that time solvent.

It was proven, that at the date of the loan to Noble, there was a difference between Mobile and Georgia notes and specie of six and a half per cent.; that exchange on New York had always borne a premium at Huntsville. What has been the rate, or whether it has been uniform, is not stated; and that seven per cent. interest is allowed by the laws of New York.

At the final hearing in the Court below, the Chancellor dismissed the bill, on the ground of usury. To reverse this decree, the case has been brought here by writ of error.

Three points are made, upon which the charge of usury is predicated.

1. That the notes received were not of par value, at the time and place of making the contract.

2. That the borrower, Noble, was charged with

the loss, in the difference of exchange between Huntsville and New York; and

3. That eight per cent. was charged and secured to be paid, in the new contract, on the first note, from its maturity to the assumption by the defendant and Veitch of that debt, when they were only liable for seven per cent., the interest of New York.

To constitute usury, there must be a contract, a forbearance, and the taking of a higher rate of interest than eight per cent. per annum. When there is a direct loan, and more than legal interest is secured for the forbearance of payment, the usury is complete, and can only be rebutted by proof of a mistake in the calculation of interest: and in general, when a profit is made, or a loss imposed, on the necessities of a borrower, whatever form, shape, or disguise, the treaty for a loan may assume, and the capital is to be returned at all events, it has been adjudged to be so much profit upon the loan, and a violation of the laws, which limit the lender to a specific rate of interest.* *2 Peters. 537.

In construing the usury laws, however, the uniform rule is, that there must be an intention knowingly, to contract for, and to take usurious interest; for if neither party intend it, but act bona fide and innocently, the law will not infer a corrupt agreement.† †9 ib. 387.

This intent, when the contract is not usurious on its face, must be gathered from the circumstances of the case—such as the situation and object of the parties at the time of the loan; the character and use to be made of the funds loaned, or article transferred, and the time, manner, and place of payment.

In regard to the first two points made in this case,

and which relate to the original loan, it must be conceded, that a loss was imposed upon the borrower between what he received and specie, and also to the extent, whatever it was, of the difference in the rate of exchange. Whether the complainant has proven sufficient to relieve himself from the charge of the usurious interest, may admit of a very serious question.

The case of the *Bank* vs. *Waggoner, et al\**—has been urged as a much stronger case in favor of establishing the interest than in this, yet that was held not to be usurious. [9 Peters, 378]

There is but little to make that case analogous with this, except that there, as well as here, the funds were received, as sound funds by the lender, and that they would not, in either case, command specie at the place where they were loaned. In the case cited, the lender did not wish to make the loan, and the loaned funds were perfectly secured, even bearing interest, and nothing was saved or made by the lender. In this, the lender was anxious to loan, to save a loss both of interest and of exchange, which were accomplished by the loan. In the case cited, the borrower stated, and it appeared that the funds loaned were equal to specie to him, and that the transaction amounted only to an exchange of credits between the Bank of the United States and the Bank of Kentucky, with this advantage to the borrower, that he obtained a longer time in which to make payment, without paying a higher rate of interest than six per cent.

Noble being dead, no evidence has been adduced as to the use he intended to, or did make of the funds received by him ; but it is proved, that at the time of

4P                    18.

the loan, exchange was at a premium on New York, the interest of which, at the maturity of the note, he took upon himself to pay; and it is not proven, that the course of exchange ever ran in favor of Huntsville; neither is it proven, that the business in which Noble was engaged, rendered it more to his advantage to pay in New York than in Huntsville.

There are some of the features which distinguish the two cases, and which also distinguish this case from that in 10 *Wendell*, 116—which was cited by the plaintiff in error, on the point relating to the difference in exchange. It being there proven, that it was for the accommodation of the borrower to pay at a place different from that at which the loan was made, and there was no proof that more than the usual rate of exchange between the two places was charged.

We do not, however, intend to express a decided opinion upon these two points in the case. It being a question of intent, arising from the circumstances of the case, the evidence not being very explicit upon some of the most material points—we have preferred to waive a decision upon them, particularly, as we are satisfied that the usury is made out upon the last point.

The first note, it must be recollected, was payable in New York. Interest, therefore, from its maturity, could only be legally exacted from that time, at the rate allowed by the laws of that State, which is admitted to be seven per cent.; yet as a part consideration for the forbearance, when the new contract was made, eight per cent. was exacted. Its be-

ELY *vs* M'CLUNG.

ing taken in a separate note, does not vary the case : it was a part of the contract.* *3Barn.& Cres, 257,

Admitting that the original loan was not tainted with usury, by any of the points above alluded to, and admit also, that the parties had a right to stipulate for eight per cent. up to the maturity of the first note, it does not appear that any stipulation, (if any could legally be,) was made as to the rate of interest, in the event that the note should not be met at maturity.

It is suggested in argument, that perhaps this may have been the understanding of the parties. This is, however, not averred in the answer of the complainant, or by Boardman ; and it would only be legal upon the supposition that, in that event, the debt should be paid in Huntsville. But this presumption is rebutted, if it could be made, from the fact, that the two last notes are made payable in New York : and here it is perhaps proper to remark, that the second point made against the first note, is applicable to the notes which are now the subject of controversy, as there is no pretence that it was more convenient to Veitch, or the present defendant, to pay in New York, than in Huntsville. If, however, the first note was legally due in New York, then, to give the party a right to eight per cent. interest since that time, it should not only appear, that this point was settled at the time of the making of the original loan, but also that the payment should be made in this State. That not being the case, but eight per cent. being secured on a contract due in New York, and the notes being still made payable in New York, there is a manifest violation of the usury laws of

New York—one per cent. more being secured than those laws authorise. If the parties were dealing in reference to the laws of this State, then one per cent. more has been exacted than was due from the maturity of the first note, to the making of the second, and the payment being required to be made in New York, thereby subjecting the party to the loss of the exchange between the two places, brings it unexplained within the principles laid down in a former part of this opinion, and as recognized in 2 and 9 *Peters*, above cited.

Objections are taken by the counsel for the complainant, to the right of the defendant, to consider these last points, on the ground that they are not specifically charged as usurious.

It is true, that a usurious contract, like any other contract, must be proved as alleged ; and a variance as to the quantum of usurious interest, or in any other material matter, will be fatal; but it is sufficient to aver and prove the contract, according to its legal effect.

Here, the charge is specific, that eight per centum was exacted, when only seven, at most, was due.

It is the duty of the Court to apply the law to the facts, and if the charge of usury is made out, it is sufficient. In this part of the case, viewed either in reference to the laws of New York, or of this State, the contract, upon its face, imports usury, by the express reservation of more than the legal interest of either State: there is no room for presumption or explanation: the intent is, in legal contemplation, apparent—*res ipsa loquitur.*

The decree must, therefore, be affirmed.