## MILLER vs. BATES.

[BILL IN EQUITY FOR INJUNCTION AND ACCOUNT ON GROUND OF USURY.]

*Dissolution of injunction.*—An injunction may be dissolved, either because the answer denies the facts on which the equity of the bill rests, or because the bill is wanting in equity.

*What constitutes usury, or device to evade usury statute.*—Where all the parties to a bill of exchange reside in this State, the fact that it is made payable in another State, with a view, on the creditor's part, of adding the statutory damages to the debt in the event of non-payment, does not, of itself, make the contract usurious, nor show that it was a mere device to evade the statute against usury.

3. *Same.*—A transaction, which originated in an application for a loan of money, but which was in form a contract for the sale of cotton, held a mere device to evade the statute against usury, on proof that the offer to sell the cotton was made in response to the application for a loan ; that the price agreed to be paid was three cents per pound more than the market value of the cotton, and was known to be so by the parties ; and that the purchaser's necessities induced him to make the contract, as a means of procuring temporary relief by a resale of the cotton.

4. *Offer to do equity.*—Where a party seeks equitable relief against a usurious contract, an averment in the bill, to the effect that "the complainant

hereby offers to pay the real advance and lawful interest," is a substantial compliance with the rule which requires an offer to do equity.

5. *Partial dissolution of injunction.*—On motion to dissolve an injunction on the answer, under a bill which seeks equitable relief against a usurious contract, if the answer does not show the exact amount due, with legal interest, the court will adopt the statement of the bill as true; and if the statement of the bill is in the alternative, it will be construed most strongly against the pleader ; and for the amount thus admitted to be due, the injunction will be dissolved, while it will be retained for the residue.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. WADE KEYES.

THE bill in this case was filed, on the 7th February, 1859, by Asa T. Miller, against Wilson M. Bates and Isham C. Browder. Its object was to obtain equitable relief against certain alleged usurious transactions between said Miller and Bates ; and to that end an account was prayed, and an injunction to restrain the sale of the complainant's property, under a mortgage given by him to secure the payment of the alleged usurious claims. Browder was the surety of Miller, and was made a defendant because he refused to join as a complainant. The transactions between Miller and Bates commenced in the spring of 1857, on the application of the former for a loan of money. Bates declined to lend the money as requested, but offered to sell to Miller fifty-five bales of cotton, then in the hands of his factors at Apalachicola, Florida, if the latter would pay him 15½ cents per pound, and give him good security for the purchase-money. This proposition was accepted by Miller, and a bill of exchange for the amount of the purchase-money was drawn by him, jointly with Browder, payable to their own order, at the Bank of Columbus, Georgia, and by them endorsed. On the 24th February, 1858, after this bill fell due, it was renewed by another bill, drawn and endorsed by said Miller and Browder as before, and payable at the office of E. B. Young in Eufaula, on the 1st January, 1859; and on the same day Miller executed a mortgage on his plantation and negroes to secure its payment. On the 28th March, 1858, Miller executed another mortgage on the same property to Bates, to secure the payment of a note

for $268, dated the 6th March, 1858, and payable one day after date, "as well as other debts and demands which said Bates then and thereafter might have against complainant;" and the bill alleged, that Bates, after procuring these mortgages, bought up several other claims against Miller which were usurious. The bill alleged, that the cotton sold by Bates to Miller was not worth, at the time of the sale, more than nine or ten cents; that the entire transaction was a mere device to evade the statute against usury; that the first bill of exchange was made payable in Georgia, not because the parties contemplated its payment at the place at which it was made payable, but in order that fifteen per cent. damages on its non-payment might be added to the debt; and that this also was intended as a mere device to evade the usury laws.

After filing his answer, (the material portions of which are stated in the opinion of the court,) the defendant moved to dissolve the injunction, and the court sustained his motion. This appeal is prosecuted from the order dissolving the injunction, and the same is here assigned as error.

J. BUFORD, for appellant.—1. No matter what form or disguise the loan may assume, if it is in effect an advance of money, or of property out of which money is to be realized; and the principal is to be returned by the borrower, with compensation for its use above the legal rate of interest,—the transaction is usurious; and the intention of the parties is to be gathered from their situation, the objects which they had in view, the use to be made of the funds, and the time, manner, and place of payment. Ely v. McClung, 4 Porter, 129; Matlock v. Mallory, 19 Ala. 697; Hamer v. Harrell, 2 Stew. & P. 323; Wright v. Elliott, 1 Stew. 391; Code, §§ 1519, 1523. Tested by these principles, the transactions between the parties in the case at bar, on the facts admitted in the answer, are undoubtedly usurious, both in the original contract for the purchase of the cotton, and in the mode adopted for securing the payment of the price. The negotiations commenced with an application for a loan of money,

which was answered by an offer to sell cotton, at a price greatly beyond its market value; and the offer was accepted, through the pressure of pecuniary difficulties, without sight of the cotton, or knowledge of its value, on the part of the purchaser. The object of the purchaser was not to speculate in cotton, but to borrow money to meet his urgent necessities, or, in default of money, to get something which he could immediately convert into money; and this must have been well known to the seller. This disguise is too transparent for the scrutiny of a court of equity. The original transaction was not only thus tainted with usury, but the form of security taken for the payment of the usurious price was further tainted. A foreign bill of exchange was taken, not because the parties had any funds in Columbus, or desired or expected to make payment there, nor to meet any commercial exigency whatever, but simply as a device to insure an additional rate of interest, by including the fifteen per cent. damages on non-payment. Whatever validity may attach to such a bill of exchange, as an isolated contract, it cannot be sustained in a court of equity, when it forms part and parcel of a usurious contract.

2. No data being furnished, from which to estimate the amount legally due to the defendant, the injunction should be retained until the account is taken. The defendant cannot possibly be injured by this course, since he has a mortgage amply sufficient to secure his entire debt; while a contrary course, allowing him to proceed under his mortgage, might work irreparable injury to the complainant.

PUGH & BULLOCK, *contra.*—1. The answer denies the allegations of the bill, as to an intention on the part of the defendant to evade the usury laws; and this leaves the bill wholly without equity. The naked facts, aside from the question of intention, show a simple sale of cotton, on a credit, and at a credit price; and that prompt payment of the purchase-money was secured by a foreign bill of exchange. That either of these ordinary commercial transactions is obnoxious to the penalties prescribed

against usury, is a novel idea, which finds no support in the adjudged cases.—Siter v. Sheets, 7 Indiana, 132; Rapelye v. Anderson, 4 Hill, 472; Wright v. Alexander, 11 Ala. 236; Childers v. Deane, 4 Randolph, 406; Gregory v. Bearly, 4 Eng. 22; Long v. Israel, 556; 26 Penn. 259; State Bank v. Coquillard, 6 Indiana, 232; Brooks v. Avery, 4 Comstock, 225; 22 Missouri, 515; 7 Barn. & Cress. 453; 13 Illinois, 578; 1 Iowa, 128; 22 Barbour, 118.

2. A party asking equity, must do equity. The complainant should have paid or tendered the amount admitted to be due, excluding the alleged illegal interest. Tucker v. Holly, 20 Ala. 426; Daniels v. Mowry, 1 R. I. 151.

3. Even if the injunction be reinstated in part, it must continue dissolved as to the amount which the complainant himself admits to be justly due.

A. J. WALKER, C. J.—An injunction may be dissolved, either on account of the denial in the defendant's answer of the equity of complainant's bill, or on account of the want of equity in the bill. The two subjects of inquiry, therefore, involved in the revision of the chancellor's decree dissolving the complainant's injunction, are the sufficiency of the denials of the answer to authorize the decree, and the equity of the bill. To the former of those inquiries we will first direct our attention.

[2.] The debts which the complainant alleges are tainted with usury, consist of a bill of exchange, drawn in favor of the defendant Bates, and three claims purchased by Bates. The bill of exchange was given in renewal of a pre-existing debt, which was also evidenced by a bill of exchange. One of the charges of usury in the last bill of exchange rests upon the fact, that 15 per cent. upon the amount of the original debt is embraced in the last bill of exchange. It appears, both from the bill and answer, that the original bill of exchange was drawn in Alabama, and made payable in Georgia. It was, therefore, a foreign bill, and the imposition of 15 per cent. damages was one of the legal incidents of its protest for non-pay-

ment.—Code, §§ 1537, 1549.   These 15 per cent. damages
are, however, to be computed " on the sum drawn for.".
There was certainly nothing unlawful, in the parties so
shaping their contract as to make the evidence of the
debt a foreign bill, with a view, on the creditor's part, of
adding 15 per cent. to the debt, in the event of non-pay-
ment.   It is alleged, however, by the complainant, in
effect, that this was a mere device to evade the statute
against usury, and that payment at the specified time and
place was not anticipated by either party; but that the
making of the evidence of the debt a foreign bill, was a
sagacious contrivance to justify the addition of 15 per
cent. to the debt, when it should be extended.   These
allegations of the bill, designed to give the charge of
15 per cent. damages the character of usury, are clearly
and unequivocally negatived by the answer, and we find
nothing to excite our suspicion of the correctness of the
denial. The imputation of usury, in that particular, must,
for the purposes of the motion to dissolve the injunction,
be regarded as removed by the answer.

[3.] The original bill of exchange is alleged to have
been given for the purchase of cotton, at a price much
larger than its value, and that this was a mere shift or
device to evade the usury law.   This is, in terms, denied
by the answer, which asserts, that the bill of exchange
was given upon a *bona-fide* sale of cotton, and that there
was no design to evade the usury laws.   In estimating
this denial of the answer, there are accompanying admis-
sions, which must be considered.—See 2 Dan. Ch. Pl. &
Pr. 986, and notes. The defendant admits, that the com-
plainant applied to him, to borrow money ; that he replied,
he had no money to lend, but would sell his cotton crop
of the previous year, if he could get his price and satis-
factory security for the payment of the purchase-money ;
that the complainant expressed his willingness to buy,
and inquired the price, which was stated to him ; that the
defendant fixed his price, without any knowledge of its
quality, and that the complainant proceeded with the
negotiation in like ignorance; that the defendant ex-
hibited to the complainant a letter, dated two days before

38

the sale, from his factor in Apalachicola, whither the cotton had been shipped, stating that the cotton was worth from 12⅝ to 12¾ cents. and that the complainant yet contracted to give 15½ cents; and that the complainant's necessities induced him to make the purchase. Besides, it is admitted by the answer, in responding to the bill, that the complainant probably expressed his apprehension of losing 16 per cent. by the purchase ; and that it is likely the respondent assisted him in figuring to arrive at the probabilities.

Do not these admissions of the answer sustain the charge of usury, notwithstanding the express denial ? In order that we may answer this question, " we must get at the nature and substance of the transaction : the view of the parties must be ascertained ;" and if there was, in real truth, a loan of money, " the wit of man cannot find a shift to take it out of the statute."—Floyer v. Edwards, 1 Cowp. 114 ; Dubose v. Parker, 13 Ala. 780. The object in such inquiries must be, to ascertain the intention of the parties. If a loan was not within their intention, there was no taint of usury. If a loan for illegal interest was intended, whatever color or disguise ingenuity may have thrown over the transaction, there is usury.—Bank of the United States v. Waggener, 9 Peters, 378–379 ; Ely v. McClung, 4 Port. 136. Coming to the precise point involved, we must decide, whether there was a real, truthful sale of cotton to the complainant, or whether the sale was a mere covering for a loan of the proceeds of the sale of the cotton at an interest equal to the excess above the value which the complainant agreed to pay. If the latter was the true character of the transaction, then the contract was usurious, to the extent to which such excess would exceed legal interest. The sale of wares, for a price beyond their real value, seems to have been frequently resorted to, as a plan for the evasion of the usury laws ; and where goods have been sold to the buyer, at a price beyond their real value, for the purpose of enabling him, by selling them at what they will bring, immediately to relieve his necessities ; and where the seller gets in the excess of price an undue compensation for the credit, the

courts have uniformly pronounced the transaction usuri-
ous.—Comyn on Usury, 94 (5 L. L. 36;) Barker v. Van-
sommer, 1 Brown's C. C. 149; Kelly on Usury, 34, (75 L.
L. 29;) Lowe v. Waller, Douglass, 708; Eagleson v. Shot-
well, 1 Johns. Ch. R. 536; *Doe v. Barnard*, 1 Esp. 11;
Matlock v. Mallory, 19 Ala. 694; Grimes v. Shrieve,
6 Monroe, 554.

In cases with features not so strong as those presented
by the defendant's answer, the contract has been pro-
nounced usurious, as will be seen by reference to the au-
thorities above cited. The complainant in this case
desired to borrow money—not to speculate in cotton.
This was known to the defendant, who met the proposi-
tion to borrow by the declaration, that he had no money
to loan, but that he had cotton to sell; which was tanta-
mount to saying, " I have no money to loan, but I have
cotton which you can convert into money." The defend-
ant knew that the object of the purchase of the cotton
by the complainant was to convert it into money, and
with its proceeds to meet the pressure of his necessities;
for he does not deny, but almost admits, that the com-
plainant made at the time a calculation of the per cent.
which he would lose in the process of procuring the
money, and that he assisted in making the calculation.
In addition to this, the defendant, although cotton was
then high, and he wanted to sell it, exacted a price beyond
its value as represented by his factor; and the complain-
ant, knowing the excess of the price above the value,
consented to give it; and this was done under the pressure
of the complainant's necessities. We cannot hesitate to
hold such a contract usurious. It was an arrangement,
by which complainant procured money to meet his neces-
sities, and the defendant enabled him to obtain it through
the machinery of a sale of cotton, exacting a compensa-
tion beyond the interest, under the guise of an excess of
price.

[4.] The counsel for the appellee is, as we think, in
error, as to the want of the necessary proposal to pay in
the complainant's bill. The last paragraph of the bill
seems to meet and satisfy the principle, that in bills of

this character, there must be a proposal to pay the principal and legal interest. It is there stated, that "the complainant hereby offers to pay the real advance and lawful interest."—Branch Bank v. Strother, 15 Ala. 57 ; Tucker v. Holley, 20 Ala. 426 ; 1 Story's Eq. Jur. 301 ; Fanning v. Dunham, 5 Johns. Ch. 143.

[5.] Notwithstanding the bill contains equity, and the equity in one aspect is not negatived by the answer, as we understand it, the injunction certainly ought not to be retained as to the entire amount of the complainant's indebtedness. The clear and unequivocal denial of the answer, as to the usury alleged to have been intended by the charge of fifteen per cent. damages, leaves the complainant without any right to a continuance of his injunction as to the value of the cotton at the time of the purchase, fifteen per cent. thereon, and lawful interest on those amounts; and thus far the injunction ought to be dissolved.—Maulden,Montague & Co.v. Armistead, 18 Ala. 500 ; 1 Waterman's Eden on Inj. 140–141. The bill alleges, that the cotton would have been worth only between nine and ten cents, if it had corresponded in quality with the defendant's representations. All misrepresentations are positively denied by the answer, and the answer also denies that the cotton was worth no more than is alleged in the bill. But the answer does not state that the cotton was worth 15½ cents, the price which the complainant agreed to give. The defendant does aver what was the price of cotton generally in the Eufaula market, and that he sold cotton to responsible and reputable merchants, about the same time, at 15 cents. But, in so answering, the defendant does not meet the question, what was the value of the particular cotton, or whether it was equal to the price which the complainant contracted to give. The defendant also exhibits a letter from his factors in Apalachicola, dated two days before the sale, estimating the value of the cotton at from 12⅝ to 12¾ cents; but the answer neither affirms nor denies the correctness of that estimate.

Having nothing to guide us upon this interlocutory motion to disolve the injunction, save the bill and answer

with the statements above noticed, we are left in doubt and uncertainty as to the value of the cotton, and, consequently, as to the extent to which the injunction should be dissolved. If the answer had disclosed the true value of the cotton, it might have been proper for us to have adopted that as the basis of our estimate. But, as the defendant has omitted to state the value, and as the subjection of the mortgage property to sale for an amount, which, peradventure, the chancellor may, upon a final hearing, ascertain to be excessive, would probably injure the complainant more than the retention of the injunction to too great an extent would injure the defendant, we shall, for the purposes of the motion now in hand, adopt the statement of the bill as to the value; and as the bill, without regard to precision, states the value at from nine to ten cents, it is proper to regard it in the light most unfavorable to the pleader, and take ten cents, the maximum of the allegation, as the value.

Our conclusion, that the injunction should be retained as to all the price of the cotton, save the value stated by the bill, is sustained by the decision in Maulden, Montague & Co. v. Armistead, 18 Ala. 500. In that case, an injunction was retained, notwithstanding the denials of the answer showed that there was no right to an injunction as to a part of the judgment, because the answer did not afford the means of ascertaining how much of the judgment was improperly enjoined.

This case differs from that in the fact, that the bill itself shows the absence of all right to a continuance of the injunction as to the price of the cotton beyond its estimated value of ten cents; and therefore we cannot in this case, as was done in that, retain the injunction for the entire amount. But we are left without any criterion by which to fix a value, if we go beyond ten cents per pound, and we think the injunction ought to be retained as to the entire price beyond.

It is not an unbending rule, that an injunction shall be dissolved, even when the equity of the bill is denied. The court may, notwithstanding such denial, retain it, when

it finds in the facts disclosed good reason for doing so. Rembert & Hale v. Brown, 17 Ala. 667.

The decree of the court below is reversed, and the cause remanded for further proceedings in accordance with the foregoing opinion. The appellee must pay the costs of the appeal.