# Barr *et al. v.* Collier *et al.*

*Bill in Equity to restrain Mortgage Sale, &c.*

1. *Sale of property; when does not constitute usurious contract.*—A sale of cotton at a price beyond its real value to one who resold for a less price, will not be denounced as an usurious transaction, unless there was a proposition to the seller to borrow, and negotiations terminating in a sale ; or a knowledge of the borrower's necessities, and that he was purchasing at an exhorbitant price to relieve himself by a subsequent sale at a less price ; or something showing

[Barr et al. v. Collier et al.]

a design on the part of the vendee to borrow, and the vendor to loan money under device of a sale, whereby under guise of excess of price, usurious interest was reserved. If such design existed, it is immaterial in what shape it is veiled.

2. *Injunction; when properly dissolved.*—An injunction, to restrain a mortgage sale, issued on a bill alleging that complainants were in pecuniary distress, which they sought to relieve by borrowing money of defendants who proposed a sale of cotton, which complainants purchased at a price beyond its value, and executed a mortgage to secure price, &c., and that the transaction was an usurious device, &c., is properly dissolved on answers denying knowledge of complainants' condition, or purpose of purchase, flatly contradicting allegations as to proposition to borrow money, and asserting that the transaction grew out of a proposition to buy at a price the defendants had previously declined.

3. *Motion to expunge, when should be made.*—A motion to expunge from the transcript matter alleged to have been improperly incorporated therein, and to disallow the registers costs for such portion, to meet with a favorable consideration, should be promptly made, and not delayed with a view of speculating upon the chances of imposing costs upon the adversary.

4. *Same; what should show.*—Transcripts being usually made out under the supervision of appellant's counsel, a motion to expunge portions of the record and disallow costs for it, should show that the appellant gave proper directions about making out the transcript, or endeavored to have the objectionable portion omitted.

APPEAL from Chancery Court of Pike.
Heard before Hon. ADAM C. FELDER.
The opinion states the facts.

JOHN D. GARDNER, for appellants.

J. N. ARRINGTON, *contra.*

BRICKELL, C. J.—On the coming in of an answer, in term time or in vacation, the court may on motion dissolve an injunction, if the bill is wanting in equity, or, if the answer contains a full and complete denial of the allegations, on which the equity of the bill rests.—1 Brick. Dig. 677, §§ 546-47-48. The motion to dissolve, therefore, involves two inquiries—first, the equity of the bill—ascertaining that it has equity, are the allegations on which the equity depends, denied by the answer. An affirmative answer to either of these inquiries, compels a dissolution of the injunction.

The allegations on which the equity of this bill depends, are, that the complainants were laboring under a pecuniary embarrassment, and applied to one of the defendants for a loan of money. That he let them have three bales of cotton, which he represented to be good in quality, at twenty-five cents per pound, which they converted into money, by a sale, realizing much less than the sum they contracted to pay for it. Good cotton at the time of the purchase, was not worth more than eighteen to twenty cents per pound. The purchase was on credit of about six months, and a note was given for the purchase money, with a mortgage on real and

personal property to secure its payment. A copy of the mortgage is exhibited with the bill, and it recites the indebtedness of the mortgagors, " in the sum of three hundred and eighty-eight and twenty-five one hundredth dollars, due the first day of November, 1870, and dated May 2d, 1870, furnished us by Z. A. Collier to enable us to make a crop, and without which we could not make a crop the present year." It is averred the sale of this cotton was an attempt to evade the statute against usury, and a device to cover a usurious transaction; that the cotton was inferior in quality, and did not meet the representation of the defendant selling it. It was sold for from sixteen to seventeen cents per pound. These are the allegations on which the right to equitable relief is founded.

The answers disclaim all knowledge of the pecuniary embarrassments of the complainants—deny that any application was made for a loan of money. Aver the negotiation was for a purchase of the cotton, and that it resulted in the sale at the price of twenty-five cents per pound, and an unwillingness to sell for a less price, the defendant owning it having confidence in a rise in the market prices. It is positively denied that there was a loan, and positively affirmed that it was a sale, made in good faith, and not as a device for obtaining usurious interest.

To constitute usury, there must be the forbearance of a debt, or a loan of money, and the *corrupt intent*, to reserve for the forbearance, or the use of the money, interest exceeding that allowed by law.—*Miller v. Bates*, 35 Ala. 580; *Thompson v. Jones*, 1 Stew. 536; *Ellis v. Bibb*, 2 Stew. 63; *Eley v. McClung*, 4 Port. 128. The nature and substance of the transaction—the intention of the parties, is the matter to be ascertained. The form of the contract is material only, as it sheds light upon the transaction; for whatever may be its form, if the transaction is really a loan of money it is within the statute. A sale of goods may be, and has often been, a device to evade the statute against usury. When the transaction has taken that form, and is impeached as usurious, its true character is ascertained by determining from the circumstances attending it, whether the real intention of the parties was to buy and sell, or to borrow and lend. The owner of property has the right to sell for the best price he can obtain, without the hazard of having the sale avoided for usury; and when the form of the transaction is a sale, the party impeaching it, "must remove the covering from the transaction, and exhibit it as a loan of money."—*Leavitt v. De Lancey*, 4 N. Y. 363. The case as exhibited by the bill and answer, stripping the bill of the allegations of the conclusions of the pleader, drawn as it must be presumed from the

specific facts stated, and which it would be difficult to support, it cannot be affirmed the transaction was a loan, taking the form of a sale to cover usury—that there was a mutual intention to borrow and lend, not to buy and sell. The specific facts stated in the bill are that the complainants applied to one of the respondents for a loan of money, and he let them have cotton, at a much larger price than its market value. It is averred the complainants were "laboring under some pecuniary embarrassment," but knowledge of such embarrassment is not imputed to either defendant. There was no negotiation, or agreement for or about a loan. A loan was not considered between the parties, and was not mentioned except in the proposition of complainants to borrow. Whether that proposition was declined, and a purchase of the cotton suggested by the seller, in the place of a loan, is not averred by the bill. Or, whether there was a proposition to make the loan, or the sale of the cotton, the one at usurious interest, and the other for the price averred to be oppressive, is not shown. On the averments of the bill, unless every sale to one in embarrassed circumstances, for a price beyond the value of the thing sold, when he offers to borrow money, is to be regarded as a loan, the transaction between these parties cannot be pronounced usurious. In all the cases, in which sales have been condemned as usurious devices, there has been, first, a proposition to the seller to borrow money, the negotiation terminating in the sale, and a knowledge of the buyer's necessitous condition, and that he was purchasing at an exorbitant price to relieve himself by a subsequent sale at a less price, or other facts and circumstances indicating that the purpose was not to buy and sell, but to borrow and lend. Mere bad bargains in the purchase and re-sale of property, are not usurious. Nor is it enough that the purchaser intended to make a usurious agreement. There must be the *aggregatio mentium*—a corresponding corrupt intent on the part of the person, with whom he deals, to make a loan, securing more than the legal interest.—Tyler on Usury, 103.

The answers disclaim all knowledge of the pecuniary embarrassment of the complainants, deny any proposal to borrow, aver the only negotiation which was for a sale, and because of confidence, in a rise in the value of the cotton, an unwillingness to take a less price, than that complainants agreed to pay. The answers thus deny every fact stated in the bill, which could tend to establish usury. It is urged, however, that the recitals of the mortgage indicate the contract was a loan, and that the seller had knowledge of complainant's embarrassment. These recitals are that the indebtedness was for advances to make a crop, and complainants inability to

[Barr et al. v. Collier et al.]

make a crop, without such advances. The mortgage is evidently not very carefully drawn; it recites an indebtedness dated May 2, 1870, due 1st November, 1870, without stating whether there was or not written evidence of such indebtedness, and if there was, whether it was bill, note, or bond. Since the statutes have given to contracts for advances to make crops, some peculiar advantages in remedies, and the force of liens on crops, it has become a custom to incorporate in securities for debts, especially when they embrace a growing crop, such recitals as these, without strict regard to their truth. Such expressions in instruments given as securities for debts, when the transaction is impeached as usurious, are not conclusive as to the character of the transaction. They are circumstances of more or less weight, to be considered in connection with all the facts, in ascertaining whether the transaction is a loan, or some other species of contract.— Tyler on Usury, 100. When a loan does not appear to have been intended, but a sale, they are without value.

The case of *Miller v. Bates*, 35 Ala. 580, is clearly distinguishable from this case. In that case the proposition originally made, admitted by the answer, was for a loan of money, which was declined, and a sale of cotton proposed. The sale was made, each party ignorant of the quality of the cotton. The object of the buyer was to raise money, and this was well known to the seller. In the presence of the seller, the buyer makes a calculation, to ascertain the interest he would pay, if he bought the cotton, at the price proposed. These facts were admitted by the answer. No such admissions are found in the answer of the respondents. On the contrary, there is an express denial of any proposition for a loan, or of any other proposition, than of purchase, and a denial of all knowledge of the complainant's pecuniary embarrassment.

The decree of the chancellor, dissolving the injunction is not erroneous, and must be affirmed.

NOTE BY REPORTER.—After the decision in the cause at the January term, 1875, and the refusal of the application for a rehearing at this term, appellants submitted a motion to expunge certain portions of the transcript, upon which the following opinion was delivered:

*Per Curiam.*—The motion of appellants to expunge from the transcript, the matter which they complain is improperly incorporated therein, and that no costs be allowed the register for such portion of the transcript, is overruled. The transcript was filed in this court at the January term, 1872, was submitted for decision at the June term, 1872 ; a judg-.

ment rendered in February, 1875; an application for a re-hearing filed by appellants, and overruled at the present term. Not until the rehearing was refused, the decree of the chancellor affirmed, and the appellants taxed with the costs, is this motion made. It comes too late; an appellant ex-pecting such a motion to meet favorable consideration, must make it promptly, and not delay it, speculating on the chances of an interposition of costs on his adversary. Be-sides, a transcript is usually made out under the supervision of the counsel of appellant, and there is no showing that he made any effort to prevent the incorporation of the unneces-sary matter. If he had properly instructed the register, as to the matter necessary to be incorporated, and these instruc-tions had been disregarded, the motion, if made in time, would have been entitled to consideration.