Hesse, Newman, & Co. v. Ledesma & Co.

---

# HESSE, NEWMAN, & COMPANY, Complainants,

*v.*

# G. LEDESMA & COMPANY, Dfts.

---

San Juan, Equity, No. 951.

Change of Attitude of Defendant—Effect on Complainant.

1. The fact that after amendment of a bill so as to bring in a second defendant, the original defendant changes his friendly position to one of hostility to the complainant, makes no difference in the case except in making it necessary for complainant to prove what has previously been admitted.

Receivership—Incidental Relief.

2. Receivership is not a ground of equitable jurisdiction, but is merely incidental to a suit to enforce an equity.

Accident—Jurisdiction Narrower.

3. Accident is one of the oldest heads of equitable jurisdiction, but has been restricted in its application. It does not apply to unexpected result or misfortune where the party could have protected himself in advance. It is based upon the plaintiff's right to relief and the impossibility of obtaining an adequate remedy at law.

Accident—European War.

4. The breaking out of the present war in Europe is not an act of God, but, so far as concerns litigants, is within the definition of an accident, whereby, contrary to plaintiff's wish, he loses some legal

right, and another person acquires a corresponding legal right which it would be contrary to good conscience for the latter to retain.

Marshaling—Land and Crop.

5. Where one creditor has recourse upon the land and the crop, and another has recourse upon the land alone, the doctrine of marshaling applies in favor of the latter.

Restraining Order—Dissolution.

6. The propriety of dissolution of the restraining order, even where the answer makes a full sworn denial, depends upon who will suffer the greater harm by the dissolution, and is a question largely discretionary with the court.

Porto Rico Mortgage Law—Procedure.

7. The mortgage law of Spain, extended to Porto Rico in 1893, is of fundamental importance to that agricultural island. It requires filing of a complaint, which is submitted to the judge before notice is issued to the mortgagor. The defenses provided are forgery, prior title, and cancelation.

Due Process of Law—Notice.

8. Due process of law implies *actor, reus, judex,* regular allegations, opportunity to answer, and trial according to some settled course of judicial proceedings. A summary process, however, which shortens proceedings, is none the less judicial process. Notice and opportunity to be heard are always essential.

*Ex parte* Proceedings—Unconstitutional.

9. An *ex parte* proceeding is where the plaintiff only is represented and the court decides without a hearing. Unless the defendant is afterwards afforded opportunity to present his case, such a proceeding is unconstitutional.

Civil Law Procedure—Action of Judge.

10. The civil law procedure contemplates a larger supervision by the judge, as representing the government, than at common law. It is much the same in Louisiana under the French civil law as in Porto Rico under the Spanish.

Mortgage Law—Constitutional—Equity.

11. The mortgage law procedure of Porto Rico is constitutional. A court of equity, however, will restrain proceedings under it as under any other law, in order to set up defenses which cannot be heard at law. This does not apply in the case at bar.

Hesse, Newman, & Co. v. Ledesma & Co.

Injunction—Local Court.

12. Section 720 of the Revised Statutes forbids the issue of injunction of a Federal court against proceedings in any local court except in aid of bankruptcy. This is designed to prevent conflict and should be liberally construed. Calling a body a court is not conclusive. If an administration commission is concerned, this section does not apply.

Court—Proceeding.

13. The test of Revised Statutes, § 720, is the nature of the proceeding. If judicial, the section applies and the proceeding covers the whole case from its inception down to the time its fruits are realized by execution by the marshal or otherwise.

Injunction—In Aid of Equity.

14. Federal courts in equity have the same power to prevent enforcement of unjust judgments procured by accident or mistake as to prevent the collection of those obtained by fraud. Section 720 would not apply in such a case.

Injunction—European War.

15. A plenary action allowing general defenses could have been brought in a local court under the mortgage regulations even pending foreclosure proceedings, and if the time admits of such suit, as in the case at bar, the Federal court will not interfere.

Plenary Suit—Federal Court.

16. The Federal court would entertain a plenary suit in the same manner as a local court, but the bill at bar must be framed with that end in view.

Injunction—Jurisdiction.

17. The remedy to take advantage of a lack of jurisdiction should be a motion to discharge the injunction, and that to take advantage of a want of equity should be a motion to dissolve the injunction; but if both questions are submitted to the court, the matter will be decided without regard to the technical distinction.

Opinion filed February 26, 1915.

Statement of facts.

This cause came on to be heard upon a motion by the de-

Hesse, Newman, & Co. v. Ledesma & Co.

fendant Westphaling, after full answer filed, to dissolve the temporary restraining order heretofore issued, and alleging as ground that this court has no jurisdiction in the premises and that the bill is without equity. The restraining order in question was issued October 30, 1914, and directs that the sale advertised to take place the next day at the district court of Arecibo be postponed, and the marshal of the district court of Arecibo and Westphaling, his agents and attorneys, restrained from attempting to carry out said sale until further orders.

The bill alleges that the complainants and the defendant Westphaling are Germans, nonresidents of the United States, and the other defendants are either citizens of Porto Rico or Spaniards, all residing in Arecibo, in Porto Rico; that the defendants Ledesma & Company are indebted to complainants in the sum of $20,000, secured by second mortgage dated December 28, 1912, the first mortgage being to Westphaling for $25,000, dated April 12, 1912; that defendants Ledesma & Company owe other debts amounting to nearly $40,000; that on account of the European war it was impossible for the agents of complainants in Porto Rico to communicate with their principals or with defendant Westphaling, who is in Germany; that defendant Westphaling, by attorneys, has obtained summarily through an *ex parte* proceeding an order of foreclosure from the insular district court of Arecibo for the sale of all the properties of defendants Ledesma & Company, being lands covered by both mortgages, having, with the crops, a value of $100,000; that the strained and difficult situation of the money markets makes it impossible for the defendants Ledesma & Company to obtain the necessary amount to pay the mortgage of Westphaling, and that the European situation makes it

Hesse, Newman, & Co. v. Ledesma & Co.

absolutely impossible for the complainants to bid for the properties and save the second mortgage through the payment of the first; that the sugar cane crop will begin harvesting within sixty days, and the cane owned by Ledesma & Company will be amply sufficient to pay the mortgage of Westphaling in a short time, while if a foreclosure is allowed no creditor will be able to recover his due, and a single creditor, taking undue advantage of certain peculiar conditions created by the act of God, will be adjudged to his advantage with all the property of Ledesma & Company; that as there is no redemption allowed by the laws of Porto Rico, such an act will represent not only a total loss for complainants, but the total ruin of defendants Ledesma & Company; that if a receiver is appointed to administer the affairs of Ledesma & Company, he will be able to pay all credits due, with their proper interest, it being possible within the next six months by the proceeds of the crop to pay the entire debt due defendant Westphaling, and perhaps a good amount to the other creditors. Wherefore a judgment is prayed against defendants Ledesma & Company, an order appointing a receiver, an injunction against creditors from collecting debts and foreclosing mortgage without permission of this court, and all other relief as may seem proper.

A short answer was filed by defendant Ledesma on October 30, 1914, practically confessing the bill and joining in its prayer. A motion was filed by defendant Westphaling on November 9, 1914, seeking the dissolution of the temporary restraining order. This was argued and the court denied the motion, filing an opinion. On January 27, 1915, defendant Westphaling filed an answer denying the equity of the bill, admitting the amounts of the two mortgages, but upon informa-

Hesse, Newman, & Co. v. Ledesma & Co.

tion and belief denying most of the other allegations of the bill. The answer avers that the mortgage to Westphaling was executed on April 18, 1913, for $25,000 in certain instalments, that the instalments were not paid, and nevertheless defendant gave Ledesma ample opportunity to pay, withholding suit longer than a year, and permitting Ledesma to raise crops, although he paid no interest; that finally, on April 30, 1914, Westphaling filed in the district court at Arecibo a suit against Ledesma to foreclose the mortgage, a copy of the mortgage and record in the suit being made an exhibit to Westphaling's answer herein; that this suit was in all respects regular and in conformity with the law of Porto Rico, that the nonpayment of the mortgage was duly shown by the certificate of the registrar of property, and that thereupon the local court made an order on May 11, requiring that the marshal notify Ledesma and all other parties in interest, including complainants herein; that copies of such notification were duly served, that on complainants' herein being served June 27, as is shown by the marshal's return; that on July 16 Westphaling moved said local district court for an order of sale, showing notice and other jurisdictional facts, and thereupon said court, on July 21, made such order of sale, directed to the marshal of the district, to proceed in accordance with the law of March 9, 1905, and to put the purchaser in possession within thirty days. Defendant Westphaling further alleges that, at the request of the complainants herein, he suspended the sale on two occasions in order to give complainants opportunity to purchase. Finally, that notice of said sale was duly given and proceedings regularly had up to the restraining order issued by this court on October 30, 1914. Defendant Westphaling denies the jurisdiction of

the court, and alleges that unless he is allowed to foreclose
Ledesma will remove the crops and Westphaling's security be
impaired and irreparable injury inflicted upon him.

There were subsequent proceedings connected with the claim
of the Central Cambalache to a refaction, which are not ma-
terial to the present issue.

*Messrs. Alvarez Nava & Domínguez* for complainants.

*Mr. Coll y Cuchí* for defendant company.

*Messrs. Herminio Díaz* and *H. G. Molina* for defendant
Westphaling.

HAMILTON, Judge, delivered the following opinion (after
stating facts as above):

The case presents a number of questions which will be con-
sidered consecutively. Some arise upon the state of the plead-
ings and others upon the nature of the relief sought.

1. The first matter to be considered is the effect of the
change of front of the main defendant Ledesma. Upon the
preliminary hearings he assented to the bill and joined in the
argument of the plaintiff's solicitor. Now, however, his solicitor
in open court announces that Ledesma has changed his attitude
and assents to the contention of Westphaling, the defendant
who has been joined since the filing of the bill.

It is not perceived, however, that this makes any difference
in the rights of the plaintiff. His case now stands or falls re-
gardless of the contention of either defendant. The only dif-

Hesse, Newman, & Co. v. Ledesma & Co.

ference is that he must prove his own case instead of having it admitted by the defense. If it were a matter of a personal defense to be set up only by Ledesma, the case would be different. But on the one hand the right of the complainant is entirely independent of the right of the defendant, and on the other it may well be that by making a second mortgage to the complainant the defendant Ledesma devested himself of any right to agree with his codefendant to the prejudice of the complainant.

2. One reason given for denying the equity of the bill is that it is a bill for a receivership, and that there is no such ground of equity jurisdiction. This is true. A receivership is merely incidental to a suit to enforce an equity. It is not itself an equity. If the bill is to be construed as one in which the court must take charge of property in order to work through a receiver, so that profits may be derived which would pay off the complainant as well as defendant Westphaling, then it must be dismissed for want of equity. A court of chancery cannot go into business. It cannot, on the ground of hardship, take possession of an enterprise and appoint a receiver to run it for the benefit of those in interest, merely because the managers have been unsuccessful in running it themselves. A receivership exists only as incident to a suit under some recognized head of equity jurisprudence.

3. Although the bill is entitled one for receivership, however, this does not control. No matter how it is entitled, if it presents an equitable case in its recitals, it may be sustained. In much the same manner it is argued that the bill, even upon its own statements, presents merely a case of hardship, and that this is not a ground for equity jurisdiction. The com-

plainant, however, says that the bill is drawn so as to come
under the equitable remedy for accident.  Accident is a ground
of equitable jurisdiction.  It is usually grouped with fraud
and mistake, but it has its own particular rules.

Originally the field of accident in equitable jurisprudence
was much larger than at present.  It is one of the oldest heads
of equity jurisdiction.  At present the jurisdiction is based
upon the plaintiff's conscientious right to relief and the impossi-
bility of obtaining an adequate remedy at law.  2 Pom. Eq.
Jur. §§ 824, 825.  It is, of course, true of this as of every
other head of equity jurisdiction, that the complainant must
not himself be proximately the cause of the alleged accident.
It has been repeatedly held that equity will not, any more than
law, relieve a tenant against such accidents as the destruction
of the leased property where he has not covenanted that his
liability ceases in such event.  Whatever might have been
the rule before the doctrine was fully developed, equity does
not now embrace every case in which an unexpected result
has been produced by accident, or even every kind of mis-
fortune, despite the *dictum* of Lord Coke, 4 Inst. 84.  As a
party could in such case have protected himself by a covenant
in the contract, he should not apply to the court to do for him
what he did not do for himself.  The result is due to his own
negligence, and not to an accident.

4. The head of accident generally comes up in connection
with forfeitures on contracts and with defective execution of
powers.  No case has been cited analogous to the present, where
the complainant alleges that he has been prevented from exer-
cising his right to redeem a second mortgage by the sudden
occurrence of war between Germany and England, which has

Hesse, Newman, & Co. v. Ledesma & Co.

practically cut off all communication between him and his principals in Germany. This bill does not state the grounds as fully as could be desired, and it may be that further amendment is needed in the way of furnishing proper allegations, but in effect the complainant says that he has the right as a second mortgagee to redeem from the first mortgage and has been prevented by the present unparalleled situation from obtaining money therefor, which he could otherwise have obtained. It may very well be that a parallel case has seldom arisen, and that therefore there is no precedent to be cited. It is not perceived, however, that this can make any difference. The declaration of war by great powers is a human event and can hardly be called an act of God. Nevertheless, so far as concerns the rights of suitors, it is something coming within the definition of an accident, as "an unexpected event, occurring external to the party affected by it, and of which his own agency is not the proximate cause, whereby, contrary to his own intention and wish, he loses some legal right or becomes subjected to some legal liability, and another person acquires a corresponding legal right which it would be a violation of good conscience for the latter person, under the circumstances, to retain." 2 Pom. Eq. Jur. § 823. It is perfectly true that Westphaling is not responsible for the situation, that it is an accident to him as much as it is to the complainant; nevertheless, under the allegations of the bill, the condition, and hence the rights, of the respective parties, have been changed by the occurrence. It would seem, therefore, that, apart from the question of amendment of form, the bill has equity.

5. There is another ground of equitable jurisdiction which may apply to the bill, although perhaps it is not necessary to

VII. Porto Rico—34.

Hesse, Newman, & Co. v. Ledesma & Co.

decide the point. A recognized equity is the right of marshaling, that is, where a defendant has a remedy against two funds and the complainant has a remedy against only one of them, the defendant may be compelled to resort first to the fund to which he alone has recourse. It is true the case at bar does not present an instance of two separate pieces of property. The marshaling, if applicable, would relate to two kinds of property rather than to two pieces of property, but nevertheless to two funds, properly speaking. Under the allegations of the bill the complainant has a second mortgage upon the land of a sugar plantation, subject to the mortgage of defendant Westphaling upon the plantation and also upon the crop grown upon it. It is further alleged that the crop will pay off all of the Westphaling claim and leave the land free for the complainant and other creditors. It would seem that in principle this presents a case where a double creditor should be confined to his special property, and in first instance be enjoined from enforcing his rights upon the joint property, provided his security be not impaired. No exact precedent has been furnished for this application of the doctrine of marshaling, but here again the situation is anomalous. At common law the crop was not regarded as distinct from the land, and indeed the crop was not generally of great value as compared with the land. In Porto Rico conditions are very different. The principal product is sugar cane, and most land is of value only for the purposes of the crop, which in turn is handled and by refacción often encumbered separately. It is true the claim of defendant Westphaling is not a refacción, and recent developments indicate that the case will be complicated by a refacción held by yet a third creditor. Nevertheless, as between the complainant

Hesse, Newman, & Co. v. Ledesma & Co.

and Westphaling, the latter has a claim on both the land and the crop.

On proceedings of this character, raising the question of want of equity, amendable defects will be considered as amended, and only the essence of the bill considered. East & West R. Co. v. East Tennessee, V. & G. R. Co. 75 Ala. 276. According to the above views, the bill presents equity, and therefore the motion to dismiss must be denied.

6. The general rule is that an injunction will be dissolved upon the full denials of a sworn answer, or for want of equity in the bill. Barr v. Collier, 54 Ala. 41. The answer which has been filed denies many of the allegations of the bill and sets up the want of equity. One of the main allegations of the bill is that the sale was ordered in an *ex parte* proceeding, while an answer alleges, and is supported by the transcript of the proceedings annexed as an exhibit, that notice was served upon the complainant as early as June 27, and furthermore alleges facts tending to show that maintaining the injunction will work irreparable damage to the defendant Westphaling. The answer, however, shows that the proceeding was based upon a law which is attacked in the bill. The rule is that where the burden is on the complainant, full denial in a sworn answer made on knowledge is generally ground for dissolution. This does not apply, however, where the burden is on the defendant. The question is one largely discretionary with the court. The propriety of dissolution, even where the answer makes a full sworn denial, depends upon the question of who will suffer the greater harm by the dissolution. In the case at bar the worst that could happen to defendant Westphaling is delay in collecting interest and the possibility of waste of

the mortgaged property. These are covered by the bond which the complainant has been directed to give. Harrison v. Yerby, 87 Ala. 185, 6 So. 3. On the other hand the complainant avers that his damage will, under the local law, be absolute, inasmuch as there is no redemption from such a sale in Porto Rico. It is true that Westphaling may and probably will be the purchaser, and that, as Westphaling is a defendant to this suit, he can be controlled by the subsequent orders of this court herein. But Westphaling is a nonresident, and if he is not the purchaser, which cannot be assured, he will not be subject to the further orders of this court. The balance of damage, therefore, would be largely upon the complainant. It is true that in this case no injunction has been issued, and of course none can be dissolved, but the same principle would apply to the restraining order and to the consideration whether an injunction should issue. It would seem best, therefore, to continue the injunctive remedy to the complainant, unless the bill is defective on some other ground.

7. These preliminary questions of procedure being disposed of, the case comes up on the main questions which have been argued. Of these the first is that the mortgage law regulations, under which the local proceedings were had, are unconstitutional as denying due process of law. Constitutional questions are not favored. Constitutionality of a law is not passed upon if the case presents any other clear ground for decision. Joiner v. Winston, 68 Ala. 130. A law is presumed constitutional, unless clearly shown not to be so. South & North Ala. R. Co. v. Morris, 65 Ala. 193. The question, however, is directly raised in the case at bar and will therefore be passed upon.

The importance of the point can hardly be overstated. Porto

Rico is essentially an agricultural district, and the basis of all credit on the Island is the land. The mortgage law was first passed in Spain in 1861, and the governmental proceeding at that time shows the importance which was attached to it. It was declared that the aim of the law was "to consolidate the territorial credit upon the basis of the mortgage security and payment of what has been pledged. He who lends under a mortgage lends to the thing rather than to the person. . . . The loan is not a personal credit, it is a real credit, it does not depend upon the person of the debtor, it is not subject to his vicissitudes. . . . Everyone knows how far the preference of his credit will reach over the other creditors; he stands in the same position as if he had fixed one portion of the price of the property for the day on which payment was to be made. . . . With the adoption of this system, capital will find solid and easy investments; the property owner will enjoy a credit proportionate to his true wealth." (Mortgage law of 1861, pages 6, 7, and 8.) In 1893 it was thought that the benefits of the law were so marked that it should be extended to Porto Rico and other Spanish colonies, and this was accordingly done. It is true that a law is to be interpreted according to its words, and not according to the intention of the lawmakers; nevertheless, the circumstances under which a law is enacted throw light upon the language.

A part of the mortgage law is the Code of Regulations for its execution, and it is really these rather than the substantive law which are attacked in this proceeding. It will be necessary, therefore, to see what is provided in both.

Article 128 of the mortgage law indicates in a general way the "judicial procedure" necessary to obtain a public sale of

the mortgaged property, and provides: In the regulations for the execution of this law, the other details for this summary proceeding shall be determined.

It is in such regulations for the execution of the mortgage law (commonly called "Regulations"), articles 168 to 176, inclusive, that we find the detailed rules as to the proceedings in question.

Article 169 of the regulations requires that a complaint be filed by an attorney at law, a certified copy of the mortgage with a memorandum of its record, and also: "A certificate of the register of property of a date subsequent to that on which the obligation fell due, declaring that the mortgage does not appear canceled, nor that its cancelation is imminent, according to the day book. . . . This certificate cannot date back more than fifteen days before the institution of the proceedings."

The practice of the local district court in these proceedings requires that a regular complaint be filed with the secretary (clerk of the court), entitled in the name of the mortgagee, as plaintiff, against the mortgagor, as defendant. The cause is noted on the books of the clerk's office as in any other action, but, instead of a summons being issued forthwith by the clerk, the papers are delivered to the judge of the court. Article 170 then provides: "The judge shall examine the petition and the documents upon which it is based, and should he consider the legal requisites complied with, he shall issue a decree without further proceedings, summoning the persons [interested] . . . . so that within thirty days they may make the payment of the sum sued for, with costs, should the latter be also guaranteed by the mortgage; otherwise there shall be a public sale of the mortgaged property."

Hesse, Newman, & Co. v. Ledesma & Co.

The defendant cannot appear, as in other actions, and move to strike an allegation from the complaint, or demur, or otherwise delay the proceedings, but must appear and pay the amount of the mortgage debt, or so much thereof as is still due in accordance with the allegations. of the complaint in foreclosure. Three defenses may be interposed in the summary proceeding itself, as provided by article 175 of the regulations, to wit, forgery, prior title, and cancelation. These requirements are shown by the proceedings, of which a certified transcript is attached to the answer, to have been carefully conformed to in the local district court in the case at bar. Were these due process of law?

8. The Supreme Court of the United States has decided that due process of law implies *actor, reus, judex,* regular allegations, opportunity to answer, and trial according to some settled course of judicial proceedings. Den ex dem. Murray v. Hoboken Land & Improv. Co. 18 How. 272, 15 L. ed. 372; Fallbrook Irrig. Dist. v. Bradley, 164 U. S. 112, 41 L. ed. 369, 17 Sup. Ct. Rep. 56. The fact that a proceeding is summary does not make it any the less judicial. While the 14th Amendment to the Constitution requiring due process of law does not define the subject, the essence is that the defendant have his day in court, that is, a fair opportunity to defend. Administrative process, regarded as necessary in government affairs, sanctioned by law and usage, is, so far as regards public matters, as much due process as any other. This, however, is limited to public matters, such as taxation and the like. Where property or other rights between individuals are involved, due process requires that there be a regular course of judicial proceedings, which implies that the party shall have notice and

Hesse, Newman, & Co. v. Ledesma & Co.

opportunity to be heard. Hagar v. Reclamation Dist. 111 U. S. 708, 28 L. ed. 569, 4 Sup. Ct. Rep. 663. The 14th Amendment does not undertake to control the power of a state to determine by what process legal rights may be asserted or legal obligations enforced, provided the method of procedure adopted gives reasonable notice and fair opportunity to be heard before the issues are decided. Iowa C. R. Co. v. Iowa, 160 U. S. 389, 40 L. ed. 467, 16 Sup. Ct. Rep. 344; Louisville & N. R. Co. v. Schmidt, 177 U. S. 230, 44 L. ed. 747, 20 Sup. Ct. Rep. 620. A defendant is entitled to his day in court, but this does not mean that he is entitled to any particular form of defense, or any particular method of procedure to set up that defense. Louisville & N. R. Co. v. Schmidt, supra; Torres v. Lothrop (Zayas v. Lothrop) 231 U. S. 171, 58 L. ed. 172, 34 Sup. Ct. Rep. 108.

9. There is a distinction between *ex parte* matters and summary proceedings. A summary proceeding is one which is *inter partes,* and the only difference between it and a regular action is that some of the usual steps are omitted. All substantial rights and defenses, however, are maintained. Under these circumstances it is as true of a summary proceeding as of a regular action that the defendant has his day in court.

On the other hand, an *ex parte* proceeding is one where only the petitioner or actor is represented, and where the court decides that justice will be promoted by action at once without hearing the other side. This is often done, and, if the other party has full opportunity later to show his side of the case, it would not offend the constitutional provision as to due process of law. A proceeding strictly *ex parte,* with no opportunity later to the person affected to set aside an improper judgment,

is not due process of law, and would offend the constitutional provision. The question at bar is, Of which nature is the mortgage foreclosure procedure,—is it summary or is it *ex parte?*

In Porto Rico there is a distinction between actions of a general nature and special proceedings of a more summary nature. Both are to be considered as judicial proceedings, because both require a cause of action, parties plaintiff and defendant, trial, and judgment. Giménez v. Brenes, 10 P. R. R. 124. This case holds that the special or summary mortgage proceeding is constitutional, and cannot be assailed on the ground of its not constituting due process of law, inasmuch as it does not leave unprotected the bona fide debtor, who is heard and afforded the means of righting the wrongs committed against him. The opinion, however, places the decision upon another ground and expressly says that the last word has not been said upon the subject. It should be noted also that there is a vigorous dissenting opinion by the late Mr. Justice Mac-Leary.

10. The procedure in the local court follows the regulations which go with the mortgage law, and is a survival from what was the procedure in Spanish times as to many other claims. Supervision by a judge was more general under that system than at common law. The government played a larger part. The private wrongs were enforced only in connection with criminal prosecutions. The civil procedure was in 1904 re-modeled by the Code of Civil Procedure as to everything except this proceeding relating to the enforcement of a mortgage, and even this is supplemented in some respects by the act of 1905.

A somewhat similar law is found in Louisiana, where the

French civil law prevails. In considering a case from that state, the Supreme Court, in Fleitas v. Richardson, 147 U. S. 538, 37 L. ed. 272, 13 Sup. Ct. Rep. 429, says:

"By the Louisiana Code of Practice, an act of mortgage passed before a notary public in the presence of two witnesses, with an acknowledgment and identification of the debt thereby secured, imports a confession of judgment, upon which the creditor is entitled to executory process, and to obtain, without previous citation to the debtor, an order for the seizure and sale of the mortgaged property for the payment of the debt. Arts. 63, 98, 732, 733, 734. But the clerk of the court is required to give notice of this order to the debtor three days before the sale, adding a day for every 20 miles between the place of his residence and the place where the court is held. Art. 735. If such notice is not given to the debtor, the proceeding is erroneous. . . . The debtor may obtain an injunction to suspend the sale, if before the time of the sale he files in the court his opposition in writing, under oath, alleging that the debt has been paid or remitted or extinguished, or that the time of payment has been extended, or that the act of mortgage is forged, or obtained by fraud, violence, or other unlawful means, or that he has a liquidated account to plead in compensation, or that the action for the debt is barred by prescription. Arts. 738, 739.

"The provisions of that Code, making the acknowledgment of the debt and mortgage, in solemn form before a notary public, conclusive evidence upon which, without previous notice to the debtor, the creditor may obtain an order for the seizure and sale of the mortgaged lands to satisfy his debt, bear some analogy to proceedings (never denied to be due process of law)

Hesse, Newman, & Co. v. Ledesma & Co.

which were well known where the common law prevailed, before the adoption of the Constitution of the United States,—such as the recognizances called statute merchant and statute staple in England, and similar recognizances in Massachusetts, taken before a court or magistrate, and upon which, when recorded, execution might issue without previous notice to the debtor, and be levied upon his lands or goods. . . .

"In Louisiana, however, the act before the notary, as well as the order for the seizure and sale, includes no lands but those described in the mortgage, and although the creditor may obtain that order without previous notice to the debtor, the sale cannot take place until the debtor has had notice and opportunity to interpose objections.

"This proceeding, therefore, is a civil suit *inter partes,* which, where the parties are citizens of different states, is within the jurisdiction conferred by Congress on the circuit court of the United States. . . . And the proceeding, though in summary form, is in the nature of a bill in equity for the foreclosure of a mortgage, and clearly belongs on the equity side of that court. Brewster v. Wakefield, 22 How. 118, 128, 16 L. ed. 301, 303; Walker v. Dreville, 12 Wall. 440, 20 L. ed. 429; Marin v. Lalley, 17 Wall. 14, 21 L. ed. 596; Idaho & O. Land Improv. Co. v. Bradbury, 132 U. S. 509, 515, 33 L. ed. 433, 436, 10 Sup. Ct. Rep. 177.

"The debtor being entitled to notice and hearing before an actual sale of the property, it would seem, upon principle, that the order for a sale must be considered as interlocutory only, and not the final decree in the case, at least when the debtor does, within the time allowed by the Code, come in and contest the validity of the proceedings. McGourkey v. Toledo & O.

C. R. Co. 146 U. S. 536, 545, 547, 549, 36 L. ed. 1079, 1083–
1085, 13 Sup. Ct. Rep. 170, and cases there cited."

11. The Fleitas Case went up upon the question whether
the decision therein was a final judgment, and consequently
one which would support appeal. The Supreme Court held
that it was an interlocutory judgment and so did not support
appeal. The case at bar more directly raises the question of
constitutionality, for the point is as to whether the complainant
has been deprived of his day in court by the foreclosure pro-
ceedings. In the first place, there is no question under the
record as shown in the answer that he had notice. He did not
avail himself of it, and now says that it would have been use-
less to appear, as the defense he had—that of accident—was
ruled out by the statute. The proceeding was summary, and
not *ex parte,* as alleged, for it gave proper notice. The ques-
tion of constitutionality can come up, not as to these features,
but as to whether the denial of the defense in question is a
denial of complainant's day in court.

It is argued for Westphaling that this court has been held
to be not a constitutional court, and that under the organic act
of 1900, §§ 8 and 34, this court cannot sustain an equitable
defense against a positive law of Porto Rico. In other words,
it is contended that the equitable powers of this court are limited
to the law as declared in the Civil Code and other statutes.

It is unquestionably true that Romeu v. Todd, 206 U. S.
358, 51 L. ed. 1093, 27 Sup. Ct. Rep. 724, has decided that
this court is not one of the district courts directly contemplated
in the constitutional provision for the judicial power of the
United States, but is one established by Congress for the better
government of acquired territory. This, however, would only

Hesse, Newman, & Co. v. Ledesma & Co.

mean that Congress could, for the purpose of such government, abridge the judicial power which would otherwise inhere in the court; it does not follow that Congress has so abridged its power. This court is expressly given all the powers of the district courts of the United States, both at law and in equity. Romeu v. Todd has already been construed by this court in the Borinquen Case as applying to matters of procedure, and not of jurisdiction. The equitable powers of this court are as ample to compel the defendant to exercise his rights derived from the civil law according to equity and good conscience as the powers of a Federal district court in a state of the American Union to compel a defendant to exercise his rights derived from the local Code of that state in accordance with equity and good conscience. A strong analogy will be found in the Federal decisions on this point in Louisiana, which is a civil law state. Gaines v. Chew, 2 How. 619, 11 L. ed. 402; Livingston v. Story, 9 Pet. 632, 9 L. ed. 255; Gaines v. Relf, 15 Pet. 9, 10 L. ed. 642. Equity changes no law. It merely compels a man to exercise his legal rights equitably.

It follows, therefore, that if a case of accident in the sense of equity jurisprudence is made out, it may in a proper case be applied to a person claiming under the mortgage law, or under any other law. In the case at bar it is strenuously denied in the answer that there was any accident, but, of course, this is a matter of proof which cannot be decided at this stage of the case.

The mortgage law is a summary proceeding, but is constitutional. While in a proper case a court of equity will permit the interposition of a defense not prescribed in the regulations, this does not at all involve the constitutionality of the law.

It is not necessary to invoke the principle that a law may be unconstitutional in one part even though constitutional in another. Vines v. State, 67 Ala. 73. So far as this case is concerned, the mortgage law is constitutional.

12. Quite apart from the question of constitutionality there arises the question of legality of enjoining the sale in the local court. It is contended by Westphaling that this is a matter which is forbidden by § 720 of the Revised Statutes of the United States, since re-enacted as article 265 of the Federal Judicial Code. [36 Stat. at L. 1162, chap. 231, Comp. Stat. 1913, § 1242.] This section reads as follows: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

Under the Foraker act the local courts are state courts for such purposes.

The section is designed to prevent conflict between courts and should be liberally construed to advance this object. American Asso. v. Hurst, 7 C. C. A. 598, 16 U. S. App. 325, 59 Fed. 1. At the same time, it takes away the right a party has in this court to one of the usual remedies in equity, and the subject therefore, from both points of view, requires careful consideration. It involves a decision of what is a court and what is a proceeding.

The use of the word "court" is not conclusive. It is used much as the Latin word *curia* was used, and indicates a body of men upon whom rests the decision of a matter, and the title possibly comes from their sitting not in a building, but in a court or yard. This old sense is preserved in several

Hesse, Newman, & Co. v. Ledesma & Co.

instances. The legislature of Massachusetts is still called a court. The general assembly of the Presbyterian church is called a court.

Since the days of Montesquieu the functions of government have been classified as executive, legislative, and judicial, and the Constitution of the United States is based largely upon this distinction. With the increasing complexity of government affairs, however, there has grown up a fourth department, generally spoken of as administrative. This combines some of the legislative and judicial functions, but is perhaps mainly executive. The word "court" is sometimes applied to such bodies also, although perhaps "commission" is more usually employed. Thus, in many of the states there is a body looking after laying and expending taxes, and sometimes burdened with election duties, which bears the name of court of county commissioners. It is really a revenue board with only incidental judicial functions. In the case of Busch v. Webb, 122 Fed. 655, it is decided that the duties of such a body as to elections are ministerial, and not judicial, and that it is not a court within the meaning of § 720.

Not dissimilar to this case arising in Texas was one in Kansas, where there was a so-called court of visitation, with power to regulate the business of railroads and telegraphs. In Western U. Teleg. Co. v. Myatt, 98 Fed. 335, it was held that this body was legislative and administrative, and that its character was not affected by its being denominated a court, and provided with the machinery and procedure of a court. Section 720 was held not to apply to this "court."

13. The word "court," therefore, is not conclusive, and the line of distinction is rather to be found in the nature of the

proceeding in question. As to this it may be observed that the word "proceeding" goes beyond the action of the judge himself, and includes those of all the parties and officers necessary to bring a case to judgment and for the enforcement of that judgment. Under § 720 this court could not ordinarily enjoin a party to a suit in the local court from proceeding with his action after it had begun. Coeur D'Alene R. & Nav. Co. v. Spalding, 35 C. C. A. 295, 93 Fed. 280. Enjoining the parties instead of the court would be mere evasion. A court cannot exercise power over a party litigant in an independent forum. Peck v. Jenness, 7 How. 624, 12 L. ed. 846. This is somewhat upon the same principle that one court cannot disturb property in the judicial custody of another, as by attachment. Moran v. Sturges, 154 U. S. 256, 38 L. ed. 981, 14 Sup. Ct. Rep. 1019.

And a sheriff or marshal carrying out the orders of the court cannot, under § 720, be disturbed any more than the court itself. American Asso. v. Hurst, 7 C. C. A. 598, 16 U. S. App. 325, 59 Fed. 1; Ruggles v. Simonton, 3 Biss. 325, Fed. Cas. No. 12,120; Mills v. Provident Life & T. Co. 40 C. C. A. 394, 100 Fed. 344. The proceeding is not complete until its fruits are realized. So here the marshal is carrying out the orders of the local court and perhaps in theory is in possession of the property.

14. It is urged by the complainant, however, that an injunction in aid of jurisdiction does not infringe § 720 when construed in harmony with § 716, which reads as follows: "The Supreme Court and the circuit court and district courts shall have power to issue writs of scire facias. They shall also have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective

Hesse, Newman, & Co. v. Ledesma & Co.

jurisdictions, and agreeable to the usages and principles of law."

Thus, under the removal statutes it has been held that an injunction will lie, for otherwise the Federal court would obtain "nothing but the shell of the case." Terre Haute & I. R. Co. v. Peoria & P. Union R. Co. 82 Fed. 945. It has also been held that a Federal court can, notwithstanding § 720, issue an injunction to restrain proceedings in a state court as an incident to a case on the ground of fraud or any other equity, in which such relief could be granted if the judgment were rendered by a United States court. In such a case a preliminary injunction may be issued against the defendant to prevent the collection of a judgment by execution or otherwise. Marshall v. Holmes, 141 U. S. 589, 35 L. ed. 870, 12 Sup. Ct. Rep. 62; Dietzch v. Huidekoper (Kern v. Huidekoper) 103 U. S. 494, 26 L. ed. 497. The Federal courts sitting in equity have the same power to prevent the enforcement of unjust judgments at law procured by accident or mistake as they have to prevent the collection of those obtained by fraud. They have plenary jurisdiction to restrain the enforcement of judgments and decrees to which the defendants had meritorious defenses that they were prevented from interposing either by fraud or accident or mistake unmixed with their own negligence. Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 336, 3 L. ed. 362, 363. This opinion was delivered by Chief Justice Marshall, and to the same effect are Johnson v. Waters, 111 U. S. 640, 667, 28 L. ed. 547, 556, 4 Sup. Ct. Rep. 619, and Arrowsmith v. Gleason, 129 U. S. 86, 97, 32 L. ed. 630, 634, 9 Sup. Ct. Rep. 237.

15. It follows from the above discussion that the mortgage

VII. Porto Rico—35.

law of Porto Rico is constitutional, and the local foreclosure proceedings those of a court, and that a court of equity will in a proper case be authorized to enjoin the proceeding in a local court in order to establish an equitable right. It does not necessarily follow, however, that such an injunction will be issued in all cases. An injunction is an extraordinary remedy and will not issue where some other adequate remedy is provided by law. In this case there is, or could have been, such an adequate remedy.

The answer shows from the record that complainant was notified June 27 of the local proceeding, that the order of sale was made July 21, almost a month afterwards, and actual sale was later postponed twice, to wit: August 18 and September 23. The war events referred to in the bill are as follows: The Archduke Ferdinand of Austria was assassinated June 28, but the Austrian ultimatum to Servia was not until July 23, replied to two days later, and followed by war between these powers July 28. There was no financial stringency up to that time. Germany declared war on Russia July 31, invaded Belgium immediately, and declared war on England August 4. If the dates in the answer are correct, and they are sworn to, the complainants had over a month free for communication with Germany, of which they either did not avail themselves, which would defeat a claim that they were without blame, or they found themselves unable to raise the money, which would negative the claim of accident, that is, misfortune due to war, as set out in the bill.

A plenary action allowing general defenses could have been brought in a local court under mortgage regulations, article 175, even pending the foreclosure proceedings. American

Trading Co. v. Monserrat, 19 P. R. R. 941. If that did not admit the defense of accident, the foreclosure proceeding itself could have been removed to this Federal court at any time before the judgment of July 21. Fed. Judicial Code, § 29 [36 Stat. at L. 1095, chap. 231, Comp. Stat. 1913, § 1011]. Accident and all other proper equities could have been set up here, and injunction could have issued under the above authorities in aid of jurisdiction. After neglecting this course complainant cannot now come in and seek to enjoin the local court. "*Leges vigilantibus, non dormientibus subveniunt.*"

16. The right of the mortgagor or third persons to bring a plenary suit against the mortgagee is recognized by the mortgage regulations themselves, article 175. The supreme court of Porto Rico has recently declared that a suit may be maintained to annul the foreclosure proceedings in a local district court different from the one foreclosing the mortgage. American Trading Co. v. Monserrat, supra. The same right exists in the Federal court. But the bill at bar is not framed with that in view. If that remedy is desired it must be by a different proceeding.

17. This case was submitted upon defendant's motion to dissolve the restraining order upon the denials of the answer and his motion to dismiss the bill for want of equity. The argument assumed a wide range and turned largely upon the question of jurisdiction of this court under Revised Statutes, § 720, and under the organic act, as well as upon the equity of the bill. Properly the remedy to take advantage of lack of jurisdiction should be a motion to discharge the injunction, and that to take advantage of the want of equity a motion to dissolve the injunction, whose jurisdiction is admitted. Both questions have

been argued, however, and there is an agreement that both are submitted to the court under the present motions. The opinion of the court is that as at present presented; therefore, the bill is without equity and the motion must be granted to dissolve the restraining order on that ground and because the bond heretofore required has not been given. The motion to dissolve, or more properly discharge, for want of jurisdiction to enjoin under Revised Statutes, § 720, is also granted. Ten days are allowed to amend the bill to meet the above opinion.

It is so ordered.